# Hobbs *vs.* Getchell & *al.*

The privilege of freedom from arrest while going to or returning from the polls on the days of election, does not extend to an elector preparing to go, if he has not actually proceeded on the way.—*Const. Art.* 2, *Sec.* 2.

This was an action of debt on a bond given for the debtor's liberties. The defendants pleaded in bar that the principal debtor was arrested in execution on the day of the state elections, and while he was at his own house, preparing to attend the election in *Sanford,* and a reasonable time only previous thereto, he being a legal voter;

and that to effect his release, and by duress of imprisonment, the bond in question was executed. To this the plaintiff replied that the arrest was between the hours of nine and ten in the forenoon, and not during his attendance at, going to, or returning from said election; and that after giving the bond at the gaol in *Alfred,* he returned to *Sanford,* where the election was holden at one o'clock in the afternoon, and there exercised his elective franchise without molestation or hindrance. The defendants rejoined that the arrest was made while he was preparing to go to the election and only a reasonable time previous thereto, and alleging the duress as before. The plaintiff surrejoined that the arrest was made between the hours of nine and ten in the forenoon, and at an earlier hour than a reasonable time for the debtor to leave his home to attend the election at the time appointed; concluding to the country; which was joined. A second plea in bar was filed, in which the arrest was alleged to have been made while the debtor was going to the place of election; to which the plaintiff replied as before; and the defendants re-affirming the same fact in their rejoinder, and tendering an issue to the country, it was joined by the plaintiff.

At the trial of this cause before *Whitman C. J.* in the court below, the defendants called witnesses who testified that they went from their own home about eleven o'clock on election day, and stopped at *Getchell's,* at his request, till he should be ready to go with them to the town meeting, which was four miles off; that he was preparing to go, and was ready, except putting on his hat, when the officer arrested him, and took him away to *Alfred;* that they went directly to the meeting, and arrived just before it was organized, which was at one o'clock; and that *Getchell* arrived after them, and before the meeting was opened. On the other hand, the officer testified that the arrest was made between nine and ten o'clock; and the prison keeper at *Alfred* testified that the commitment was before the meeting in that town was organized, which was at twelve. The distance from *Getchell's* house to the prison was four miles; and thence to the place of election in *Sanford* was five miles. This evidence, the Judge instructed the jury, was insuf-

ficient to maintain either of the issues on the part of the defendants; and they therefore found for the plaintiff; to which the defendants filed exceptions.

*W. B. Holmes*, for the defendants, referred to the Constitution of Maine, *Art. 2, sec.* 2, exempting electors from arrest while going to, attending at, and returning from elections; and to similar exemptions to members of the legislature in those of the United States and of Massachusetts. The privilege here claimed is analogous to those of legislators, parties and witnesses. By the law and custom of Parliament, members of the House of Commons are privileged for a convenient time to enable them to come and go. 1 *Tidd's Pr.* 170. And this has been extended to forty days before and after each session; though the peers deemed twenty days sufficient.

Courts of Justice, in the case of parties and witnesses, have given the law of privilege a liberal exposition, allowing the party a reasonable time to prepare for his departure, and not judging with severity even his loiterings by the way. *Lightfoot v. Cameron*, 2 *H. Bl.* 1113; *Hatch v. Blissett, Gilb. Ca.* 308; *Smythe v. Banks*, 4 *Dal.* 329; *Bro. Abr. tit. Privilege*, 4; *Meekins v. Smith*, 1 *H. Bl.* 636; *Hunt's case*, 4 *Dal.* 387; 6 *Mass.* 245; 1 *Tidd's Pr.* 173; 1 *Maule & Selw.* 638; *Moor* 57, 340; *Jacob's Law. Dict. tit. Priv. and Parl.*; *Basset's case*, 7 *Bac. Abr.* 413; 1 *Dal.* 296.

The privilege of the elector is given by the constitution; and it should be expounded as liberally as the privilege of parties and witnesses. The one is protected for the sake of public liberty; the other for the sake of public justice. The whole day of election must have been intended; as in some cases the elector might dwell so far from the place of balloting as to render it necessary to leave his home on the preceding day. The act of preparation to go, shows the intent, and is done with reference to the election, not less than that of going to the polls. It necessarily includes the *eundo*, and ought as such to have been left to the jury. 1 *Bl. Com.* 167; 3 *Bl. Com.* 289.

*E. Shepley*, for the plaintiff, cited 6 *Com. Dig. Privilege A*; *Ex parte McNeil* 6 *Mass.* 264; *Meekins v. Smith*, 1 *H. Bl.* 636;

*Spence v. Stuart,* 3 *East.* 89 ; *Coffin v. Coffin,* 4 *Mass.* 29 ; *Cook v. Gibbs,* 3 *Mass.* 197 ; *Lewis v. Elmendorf,* 2 *Johns. Ca.* 222.

*D. Goodenow* argued in reply.

MELLEN C. J. delivered the opinion of the Court at the ensuing *May* term in *Cumberland.*

The defendants contend that *Getchell* was illegally arrested and committed to prison, and being under duress of imprisonment when the bond declared on was executed, the same is void. Whether the arrest and imprisonment were illegal was the question on trial. The defence of the action is placed on a provision in our constitution, *art. '2, sec.* 2, which is in these words, viz : " Electors shall, in all cases, except treason, felony and breach of the peace, be privileged from arrest on the days of election, during their attendance at, going to, and returning therefrom." It appears that *Getchell* lived more than four miles from the place of the town meeting at *Sanford,* and four miles from the prison in *Alfred ;* and that the distance from the prison to the place of the town meeting in *Sanford* is five miles. If the arrest was not illegal, the commitment was not. We are well satisfied that the latter part of the above cited section is restrictive of the generality of the preceding, and that the meaning is that Electors should be privileged from arrest during such part of the days as is occupied by them in their attendance at, going to and returning from the election. It is contended that *Getchell* was arrested as he was going to the town meeting, which was to be holden on that day at one of the clock in the afternoon. The witnesses produced by the defendants, testified that as *Getchell* was preparing to go, and ready, excepting putting on his hat, the arrest was made. According to this testimony, *Getchell* was not, when arrested, going to the election or ready to go—he was preparing to go. This does not bring the case within the language of the constitutional inhibition. Does the evidence bring it within its fair import and construction ? The abovementioned witnesses say they left home about eleven of the clock, in order to go to the meeting, and on their way, called at *Getchell's.* On the other hand, the officer who made the arrest

testified that he did it between nine and ten o'clock ; and the prison keeper testified that the commitment was before the meeting at *Alfred* was organized, which was to be held at 12 o'clock. On these facts was not the arrest made so early in the day as to be liable to no objection ; or, in other words, were not two or three hours more than a reasonable time to be occupied in travelling four miles, or a little more, to attend the town meeting ? But we again observe that the defendants' own witnesses proved that *Getchell* had not left home and was not going or ready to go to the meeting when the arrest was made. We have no authority to extend the language of the constitution to cases which it does not comprehend ; and we must remember that the inhibition as it stands gives a right to debtors on the days of election, or at least, on a part of those days, which rights thus given, have to the same extent, abridged the rights of creditors. We feel it our duty to be governed by the plain language of the constitution as it stands. Questions of privilege in England depend on different principles or usages, and not on definite, constitutional provisions. Exception overruled.

*Judgment on the Verdict.*